In re PHILPOTT.

No. 3395.

District Court, S. D. West Virginia.

Dec. 30, 1940.

Okey P. Keadle, of Huntington, W. Va., for bankrupt.

Amos A. Bolen, of Huntington, W. Va. (Fitzpatrick, Brown & Davis, of Huntington, W. Va., on the brief), for Personal Finance Co.

HARRY E. WATKINS, District Judge.

Personal Finance Company, a creditor, objected to bankrupt's petition for discharge. It is charged that the bankrupt obtained an extension or renewal of credit from the objecting creditor by making a materially false statement in writing respecting his financial condition. Bankruptcy Act, Sec. 14, sub. b (3), as amended, 11 U.S.C.A. § 32, sub. b (3). The matter was referred to referee as special master. The special master has made a report in which he has made specific findings of fact and recommends that the discharge be denied.

Exceptions to this report have been filed by the bankrupt.

There is no dispute in the evidence that before executing an extension or renewal of his loan, the objecting creditor required him to sign a written financial statement, disclosing, among other things, his total indebtedness, exclusive of the amount owed to objecting creditor. The evidence also shows, without contradiction, that the written financial statement which bankrupt signed, and to which he made oath, placed such indebtedness at $107, all owing to one creditor; whereas bankrupt then knew that he owed seventeen creditors, aggregating $1,041.34. The conflict in the testimony relates to the circumstances under which such statement was made.

Bankrupt says: (1) that the statement was not false because he did not understand it; (2) that he did not intend to deceive; and (3) that the creditor did not rely upon the statement in granting the extension of credit.

Bankrupt had done business with this small loan company for more than ten years. Within two years previous to bankruptcy, he had obtained five loans, or extensions of credit. In two instances the loans were paid. In two other instances, after he had paid a small amount on the loans, he applied for renewals, and the loans were again increased to the limit of $300 permitted under the West Virginia Small Loan Act. Acts 1933, c. 13. On each of these previous occasions financial statements were given by bankrupt but these records have since been destroyed by the finance company.

On November 30, 1937, the bankrupt owed the finance company $247.30, at which time his loan was renewed by increasing the amount to $300, cash being given for the difference. On April 2, 1938, the amount due on this loan was $267.34. The loan was in default and bankrupt wanted to increase the loan and thereby obtain additional money. The finance company refused, but did agree that if he would pay $2.34 upon principal reducing the account to $265, the account would be refinanced by extending the time of payment and reducing the monthly payments.

▮ Before the loan was refinanced, bankrupt was required to sign and swear to a written financial statement which provided as follows: "I hereby make application to you for a loan of $265 under the Small Loan Law of this State. For the purpose of informing you fully of my financial condition, the following statements, upon which you may rely in acting upon this application, are hereby made". Statement 3 was as follows: "Exclusive of such amount as I owe you, I hereby state, affirm, represent and warrant to you that my total indebtedness and liabilities on this date do not exceed $107". A previous statement showed that this amount was owing to one creditor upon a refrigerator. Bankrupt admits that he filled in the figures of $107 in the above statement and that one other answer in the financial statement is in his own handwriting. He does not remember whether he read the statement before signing it. He says he might have read and forgotten about it. He would not say that the other questions were not asked him. He simply says that he understood the statement related only to the claim for the refrigerator and not to other debts. No other witness testified in his behalf. He is not a laborer but check clerk for the Chesapeake & Ohio Railway Company at Huntington. Under these circumstances, I am of opinion that the master was correct in finding that the statement was false and that bankrupt knew he was making a false statement.

▮ It is urged that bankrupt did not intend to deceive. It is undoubtedly true that Section 14, sub. b (3), has reference to a statement, materially false in fact, deliberately made for the purpose of deceiving, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive. But where it is shown that bankrupt has obtained an extension of credit by means of a materially false written financial statement, which he knew to be false, intent to deceive is inferred and the burden of disproving such intent rests upon the bankrupt. Matter of Monsch, D. C.Ky., 18 F.Supp. 913. Collier on Bankruptcy, 14th Ed., section 14.43, and cases there cited. In this respect the bankrupt has failed.

▮ To bar bankrupt's application ·for discharge under Section 14, sub. b (3) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c (3), these elements are necessary: (1) the statements must be materially false; (2) the statement must be in respect to his financial condition; (3) it must be in his handwriting; (4) it must be given to obtain credit or extension of credit; (5) credit or extension of credit must be given on the faith of such statement.

The amendment of 1926 to Section 14, sub. b, now Section 14, sub. c, provided: "If, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which * * * would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt". This same provision has been substantially retained under the Chandler Act of 1938. Under this amendment it is for the objecting creditor to show reasonable grounds for believing that the bankrupt has committed the act charged, and when this is done, the burden of proving that he has not committed the objectionable acts shifts to the bankrupt. Collier on Bankruptcy, 14th Ed., section 14.12.

It is further urged that the creditor did not rely upon the financial statement in extending the credit. I cannot agree.

Two witnesses testified for the finance company, F. L. Smith, local manager, and Dale F. Peter, formerly assistant local manager. Peter stated that he handled the renewal in question, and that he told the bankrupt that the extension would depend upon his financial condition. He states that he relied upon the statement, and that if he had known the true amount of bankrupt's indebtedness, he would not have granted the renewal of credit. Peter has not been employed by the finance company since October 26, 1938, and would seem to be disinterested. He is very definite in his recollection, whereas the bankrupt's memory was obviously uncertain.

Bankrupt was examined and cross-examined at length, but never claimed that he had on this occasion given a complete list of his debts to the finance company. Several days after the evidence was closed, bankrupt asked to re-open the case and then testified for the first time that Peter asked him for his debts; that he gave an itemized statement of all outstanding debts to him; that Peter made a memorandum of them and put them in the file. Peter denied this. The finance company loan was secured by a chattel lien on bankrupt's household goods, which were appraised by the company at $152, and which were ultimately sold for $158.40. It appears that the latter part of April, 1940, bankrupt told the finance company that he was unable to meet his payments because of other obligations, and that the finance company did nothing in the way of enforcing its claim. A voluntary petition in bankruptcy was filed on July 1, 1938.

It is well settled that partial reliance on a financial statement is all that is required, in the way of reliance, to sustain an objection to bankrupt's discharge. In re Hochberg, D.C., 17 F.Supp. 916. Here it is shown that the finance company did rely upon the statement in extending credit.

Question has been raised as to what weight the court should give to the master's findings in a bankruptcy case instituted prior to the effective date of the Chandler Act and of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Under the terms of present General Order 37, 11 U.S.C.A. following section 53, the Federal Rules of Civil Procedure relating to special masters is now applicable to all matters pertaining to the appointment and powers of and the proceedings before such masters where not inconsistent with the act or the general orders. Rule 53 (e) should be read with General Order 47, and if this is done, no inconsistency appears. General Order 47 provides: "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions". Rule 53 (e) (2) provides that: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous". Prior to the effective date of Rule 53 in bankruptcy cases, the effect to be accorded a special master's findings of fact by a court was precisely the same as stated in Rule 53. Then, as now, the special master's report was advisory only, in contrast to the referee's power to make a binding order unless reversed on review. The report of the special master is of no effect until confirmed by the judge and is therefore said by the cases to be "advisory only" or "merely advisory". Although advisory in the sense that it needs confirmation, the master's findings of fact are presumptively correct and should be adopted by the court unless shown to be clearly erroneous. In this case the special master

has had an opportunity to hear and see the witnesses. His findings will be reversed only when this court is satisfied that error has been committed. I am not satisfied that there was error in his findings. On the contrary, the evidence supports the findings of the master.

■ Bankrupt has also excepted to the action of the referee in refusing to permit him to offer further evidence upon a re-reference by the court. Such re-reference was for the sole purpose of having the referee make more specific his findings with reference to (1) whether the written statement was false and (2) whether such statement was relied upon by the objecting creditor in extending credit. The nature or materiality of the new evidence does not appear.

The exceptions to the master's report will be overruled, the master's report will be confirmed, and the bankrupt denied his discharge. An order may be submitted accordingly.