**In re Rosario Francis BAIATA, Debtor.**

**Linda de BOTTARI, Plaintiff,**

**v.**

**Rosario Francis BAIATA, Defendant.**

**Bankruptcy No. 880–04049–18.**
**Adv. No. 880–0866–18.**

United States Bankruptcy Court,
E. D. New York.

July 16, 1981.

Linda de Bottari, plaintiff pro se.

Jules H. Rosenberg, Smithtown, N. Y., for debtor.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

The captioned adversary proceeding was instituted by Linda de Bottari (hereinafter "plaintiff"), seeking a judgment adjudging her claim in the sum of $8,614 against Rosario Francis Baiata (hereinafter "debtor"), nondischargeable pursuant to §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. In supplement, plaintiff prays for judgment in the sum of $2,000 for her time and costs in pursuit of this action.

The evidence adduced at trial held on April 6, 1981, disclosed the following facts:

(1) The debtor operated AAA Islander Construction Corporation, a home improvement business, which was engaged in heavy construction and architectural work. As stated by the debtor, he was the sole corporate officer of said company.

(2) On October 25, 1978, the plaintiff and Ms. Marjorie Kellogg, (who lived with the plaintiff at the time) contracted with the debtor to build an extension to plaintiff's home in Smithtown, New York. The work to be performed was based on plans drawn by Jerry Kronovet, the plaintiff's architect.

(3) According to the contract, work was to begin as soon as practicable, but in any event, no later than November 1, 1978. The work was to be completed within two weeks, at a total price of $9,800.

(4) At the time of the contract, neither the debtor nor AAA was licensed to perform contracting work in Suffolk County.

(5) On September 6, 1978, the Suffolk County Department of Consumer Affairs mailed debtor a notice of hearing for the purpose of license revocation. This notice was sent to the address he had provided on his license application.

(6) After a hearing which the debtor did not attend, his Suffolk County Home Improvement License, No. 4108–HI, was revoked by the Suffolk County Department of Consumer Affairs on September 19, 1978. Notice of revocation was also mailed to the address provided by the debtor on his license application.

(7) The debtor testified that he did not receive notice of the hearing or of the actu-

al revocation of his Suffolk County Home Improvement License because he moved and left no forwarding address while running a business from his home. He provided no explanation for his failure to inform the Suffolk County Department of Consumer Affairs of his move, which was expressly required by the license application.

(8) The debtor did not apply for a Suffolk County Home Improvement license for AAA until December 11, 1978, more than six weeks after contracting with Ms. de Bottari.

(9) Furthermore, the debtor's license, which was revoked on September 19, 1978, covered his activities as a salesman while associated with BB&R Custom Kitchens and Baths (hereinafter "BB&R"). BB&R was a partnership run by the debtor and three other individuals, exclusively engaged in renovating kitchens and bathrooms. The debtor, by his own testimony disassociated himself completely from said entity in June 1978.

(10) Although the debtor testified that neither the plaintiff nor Ms. Kellogg ever inquired if he was a licensed contractor, Ms. Kellogg testified at trial that she did in fact inquire whether the debtor was a licensed contractor. Ms. Kellogg further stated that the debtor told her and the plaintiff that he was licensed in Suffolk County.

(11) Plaintiff tendered the down payment required by the contract, in the sum of $2,500, on the date of the signing of the contract.

(12) It is not disputed that work under the contract was delayed until November 10, 1978, at which time the debtor commenced excavating the job site. In the course of said work, one of the defendant's employees caused damage to the bushes and shrubs in plaintiff's driveway with a cement truck. Two days later, the roof and one end wall of the plaintiff's residence were opened, preparatory to the construction of an extension of the dining room. This opening was covered with plastic sheeting. When work was interrupted over the Thanksgiving weekend, storm damage resulted, part of which the debtor repaired.

Further damage to plaintiff's premises was caused by operation of a backhoe machine, which severed an electrical cable located beneath a window.

(13) On December 7, 1978, the plaintiff tendered a second payment in the sum of $2,500 despite the fact that the debtor had not performed any work at the construction site over the previous three days, and still had not delivered any of the materials necessary to finish the job.

(14) On December 15, 1978, more than a month after the specified completion date, less than fifty percent of the contract work had been performed. Mr. Kronovet requested the debtor to furnish copies of orders placed for contract materials, wood samples, and a schedule of work already completed.

(15) On December 21, 1978, the plaintiff, Mr. Kronovet, and the debtor agreed on a revised schedule for completion of the contract.

(16) No further work on the contract was completed.

(17) The debtor testified that he became disabled in an accident on another job on December 27, and ceased doing business. However, no medical evidence was submitted by the debtor to support his allegation.

(18) On January 16, 1979, plaintiff mailed debtor a letter ordering him to complete the job within seven days or she would deem the contract terminated, pursuant to section twenty-four of their contract.

(19) By letter of January 26, 1979, plaintiff exercised her option to declare the debtor in default, and terminated the contract.

(20) Sometime thereafter, the plaintiff commenced an action against the debtor in New York Supreme Court, Suffolk County.

(21) On June 5, 1980, the plaintiff and the debtor executed a settlement, terminating plaintiff's action. Pursuant to this settlement, the debtor was to remit the sum of $350 per month to the plaintiff.

(22) Upon the debtor's default under the stipulation, plaintiff obtained a judgment in the sum of $8,614 against the debtor.

(23) On July 16, 1980, the debtor filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. In the petition, the debtor listed plaintiff as the holder of an unsecured claim in the amount of $8,614.

Based on the foregoing factual summary, the following issues are raised:

(I) Is the debt owed to the plaintiff nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code?

(II) Is the debt owed to the plaintiff nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code?

(III) Is the debt owed to the plaintiff nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code?

(IV) Is the debt owed to the plaintiff nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code?

## I

As a preliminary matter, the Court must determine the requisite burden of proof for actions commenced under § 523(a). Plaintiff contends that she need only prove the elements set forth in § 523(a) by a fair preponderance of the evidence, citing *Steadman v. SEC*, 448 U.S. ——, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981).

The Court finds this particular case inapposite, inasmuch as it concerns the standard of proof in an administrative proceeding before the Securities Exchange Commission, governed by the Administrative Procedure Act.

■ While not unmindful of the Bankruptcy Code's broad remedial purposes, which are meant to provide the honest debtor with a fresh start, H.R. No. 595, 95th Cong., 1st Sess. (1977) 125, *reprinted in* U.S. Code Cong. & Ad. News 1978, 5787, 6086; *cf. Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915), the Court concludes that the correct standard of proof in § 523 dis-

chargeability proceedings in this district is a fair preponderance of the evidence. *In the Matter of Vincent*, 75–B–1930 (E.D.N.Y. Nov. 9, 1976); *In the Matter of Breslau*, 74–B–620 (E.D.N.Y. Feb. 26, 1976); *In the Matter of Tobin [Tobin I]*, 74–B–88 (E.D. N.Y. Apr. 24, 1975); *In the Matter of Tobin [Tobin II]*, 74–B–88 (E.D.N.Y. Feb. 20, 1975); *accord, In re Weiler*, 1 B.C.D. 1521 (S.D.N.Y.1975); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967); *cf. In the Matter of Calabrese*, CCH ¶ 65,389 (E.D. N.Y.1974).

## II

Plaintiff contends that her claim is nondischargeable under § 523(a)(2)(B) of the Bankruptcy Code, which provides as follows:

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of *a statement in writing—*

■ that is materially false;

(ii) *respecting the debtor's* or an insider's *financial condition;*

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied, and

(iv) that the debtor caused to be made or published with intent to deceive. (Emphasis added).

■ It is beyond dispute that to satisfy § 523(a)(2)(B), there must exist a written statement which represents the debtor's financial condition. *In re Youssef*, CCH ¶ 66,032 (Dist.Ct.D. of C. 1976); *In re Gonzalez*, 287 F.Supp. 281 (S.D.N.Y.1968).

■ In the case at bar, the plaintiff contends that the home improvement license application dated December 11, 1978, and the contract between the parties constitute such writings. The Court finds upon examination of the documents in question that the writing requirement of subsection (2)

has not been met. Neither document discloses any statement respecting the debtor's financial condition. *See* 3 Collier on Bankruptcy (15th Ed.) ¶ 523.09(3) at 523–57, 58.

### III

With respect to plaintiff's second cause of action, plaintiff alleges that her claim should be declared nondischargeable under § 523(a)(4). Section 523(a)(4) states:

> (a) A discharge under § 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

■ The fiduciary relationship the Code contemplates is an express or technical trust between the parties, not a duty imposed *ex maleficio. Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2nd Cir.1937); *Davis v. Aetna Accept. Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934).

■ "To qualify as a fiduciary, [a] trustee must have duties which are *independent of any contractual obligations between the parties* and which are imposed *prior to*, rather than by virtue of, any claim of misappropriation of trust funds." (Emphasis added). *In re Mackey*, 79–B–842 (E.D.N.Y. May 29, 1980); *see also Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *In re Paster*, 78–B–2202 (E.D.N.Y. Apr. 1, 1980).

■ Plaintiff contends that a sufficient fiduciary relationship existed between the debtor and AAA so as to render plaintiff's claim nondischargeable under this subsection. However, the law mandates that for subsection (4) to apply, the fiduciary relationship must be between the debtor and the moving party. *See Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); ± *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877).

■ In the case at bar, the plaintiff neither alleged nor demonstrated at trial that there existed a fiduciary relationship between herself and the debtor. Even assum-

ing *arguendo* that there existed a sufficient fiduciary relationship so as to bring her claim within the purview of subsection (4), the wrongdoing alleged was not to the plaintiff or her interests, but rather involved an allegedly wrongful act by the debtor to AAA, his own corporation.

With respect to larceny and embezzlement, while the Bankruptcy Code changed the relation provisions of the Bankruptcy Act by not qualifying "larceny" or "embezzlement" by the phrase "while acting in a fiduciary capacity," 3 Collier on Bankruptcy, ¶ 523.14 at 523–94; *In the Matter of Walker*, 7 B.R. 563, 7 B.C.D. 68, 69 (Bkrtcy. M.D.Ga.1980); *In re Williams*, 7 B.C.D. 45, 47 (W.D.Va.1980), 2 C.B.C.2d 796, 799–800, the gravamen of plaintiff's complaint is fraud rather than larceny or embezzlement.

### IV

Plaintiff seeks a finding of nondischargeability pursuant to § 523(a)(6), which provides:

> (a) A discharge under § 727 . . . does not discharge an individual debtor from any debt—
>
> (6) for *willful and malicious injury* by the debtor to another entity or to the property of another entity. (Emphasis added).

■ "Willful and malicious injury" refers to "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse . . . . Under this paragraph, 'willful' means deliberate or intentional." 3 Collier on Bankruptcy (15th Ed.) ¶ 523.16 at 523–115 [quoting from legislative history]; *In re Ellman*, 48 F.Supp. 518 (W.D.N.Y.1942); *Francine v. Babayan*, 45 F.Supp. 321 (E.D.N.Y. 1942).

■ While plaintiff points to the damage caused by the workmen on the job site (for which the debtor was contractually responsible), to bring her claim within this section, she has failed to establish a *prima facie* case showing that the injury complained of was "willful and malicious." She failed to call any of the workmen who caused the damage to testify as to their intent. The record

is barren of any evidence remotely tending to show that debtor's workmen intentionally caused the alleged damage.

## V

Finally, plaintiff contends that her claim is not dischargeable in bankruptcy pursuant to § 523(a)(2)(A), whose elements are as follows:

(a) A discharge under § 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) *false pretenses, a false representation*, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. (Emphasis supplied).

■ For plaintiff to succeed, it is axiomatic that she must demonstrate a fraud "involv[ing] moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." 3 Collier on Bankruptcy (15th Ed.) ¶ 523.08 at 523–39. *See e. g., In re Mackey*, No. 79–B–842 (E.D. N.Y. May 29, 1980); *In re Wolf*, No. 880–0250 (E.D.N.Y. June 29, 1978); *In re Ashley*, 5 B.R. 262, 2 C.B.C.2d 949, 954 (Bkrtcy. E.D.Tenn.1980); *In re Kalk*, 270 F. 627 (N.D.N.Y.1921).

■ Furthermore, the statement complained of must have been knowingly and fraudulently made, and relied on by the plaintiff. 3 Collier on Bankruptcy (15th Ed.) ¶ 523.08 at 523–40, 41; *In re Houtman*, 568 F.2d 651, 655 (9th Cir.1978); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).

This reliance must be the proximate cause of the damages plaintiff seeks, *In re Miller*, 5 B.R. 424 (Bkrtcy.W.D.La.1980); *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978), *citing In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va. 1967); although it need not be the only proximate cause of the damage. *See In re Lawrence*, 4 B.C.D. 959 (D.R.I.1978) *quoting In re Gordon*, 76–B–955 (D.C.Conn. Dec. 9, 1977); *In re Spaulding*, 1 B.C.D. 1683, 1686 (D.Vt.1975); *In re Philpott*, 37 F.Supp. 43, 46 (S.D.W.Va.1940).

■ The Court, on the basis of a fair preponderance of the credible evidence, finds that the debtor knowingly and fraudulently made a false representation; to wit, that he was licensed by Suffolk County to perform contracting and construction work on the date of the signing of the contract, October 25, 1978. The record shows that the debtor induced the plaintiff to release funds, fully cognizant of his false statement to the plaintiff. The Court finds that the funds advanced to the debtor were not used to purchase construction materials necessary to the completion of the contract. The record clearly establishes that debtor never purchased or delivered the essential materials to the job site.

■ The record further reveals a willful pattern of procrastination, gross incapability, and actual fraud. Work progressed, at first fitfully; then it ceased completely. Debtor continued to represent through January that he would finish the job, but made no further progress after receiving a second payment under the contract on December 7, 1978. Four days after the receipt of this payment, the debtor first applied for a home improvement license for AAA with the Suffolk County Department of Consumer Affairs. The Court takes judicial notice of the fact that operation of a contracting business without a license in Suffolk County is a violation of the Suffolk County Occupational Licensing Law, Local Law 21–1974, as amended. The plaintiff, endeavoring to have the job finished, allowed the debtor two months to perform a contract that should have been completed within two weeks. On January 26, 1979, when the plaintiff declared the debtor in default, less than fifty percent of the contract work had been performed.

Further, the Court finds incredible the debtor's explanation of his ignorance of the existence and outcome of a license revocation proceeding with took place on Septem-

ber 16, 1978. Consonant therewith, the Court finds that the debtor could not reasonably have believed that the license he held for BB&R as a salesman of kitchen and bathroom remodeling services covered his activities as an independent contractor in a new line of business, AAA run by different principals. (The very subject matter of the contract—an extension to an existing dwelling—was obviously work of a more extensive nature than that of his former business involvement with BB&R.)

Since the debtor does not dispute the fact that he did not seek a license for AAA in Suffolk County until sometime after signing the contract with the plaintiff, the conclusion is inescapable that the debtor knew he was not licensed to perform home improvement work in Suffolk County.

Although the debtor testified that he never told the plaintiff he was a licensed contractor, the Court finds that the debtor did represent himself as licensed in Suffolk County to perform home improvement work of the type contemplated by the contract. He made this statement immediately before the signing of the contract, although in fact he was not licensed. This positive misstatement of fact induced the plaintiff to contract and to turn over the debtor two checks totaling $5,000 in value.

Debtor, in his post-trial memorandum, points to the fact that he was recommended to the plaintiff by her own architect. Thus, he claims, she did not rely on his misstatement. Yet even partial reliance by the plaintiff on the debtor's representation is sufficient. *See In re Lawrence*, 4 B.C.D. 959 (D.R.I.1978) *quoting In re Gordon*, 76–B–955 (D.C.Conn. Dec. 9, 1977); *In re Spaulding*, 1 B.C.D. 1683, 1686 (D.Vt. 1975); *In re Philpott*, 37 F.Supp. 43, 46 (S.D.W.Va.1940). Plaintiff's partial reliance is sufficient, therefore, to satisfy the reliance element of § 523.

This Court is persuaded on the evidence adduced and finds that the plaintiff would not have hired the debtor had the debtor not falsely represented that he was licensed by Suffolk County. The incidence of license conveys to lay persons a concept of authority and standards of workmanship impacting on reliance.

## VI

Finally, plaintiff seeks an award of $2,000 for the time and expense of pursuing this action.

Section 523(d) expressly authorizes the Court to grant judgment "for the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability ..." in cases where the debtor successfully defends a dischargeability proceeding. The purpose of this subsection is to discourage a creditor from impairing the debtor's fresh start by bringing an action that the debtor will settle, rather than litigate, to avoid the expense of attorney's fees. 3 Collier on Bankruptcy (15th Ed.) ¶ 523.12 at 523.69, [citing legislative history].

By contrast, § 523(d) does not authorize the Court to award attorney's fees to the creditor who is successful in a dischargeability proceeding. 3 Collier on Bankruptcy (15th Ed.) ¶ 523.12 at 523.69, [citing legislative history]. The statute thus attempts to strike a balance between the debtor and the creditor. Inasmuch as the creditor is generally better able than the debtor to bear the costs of litigation, a contrary rule would destroy the balance by again inducing the debtor to settle, under the threat of having the creditor's attorney's fees awarded against him. 3 Collier on Bankruptcy (15th Ed.) ¶ 523.12 at 523.69, [citing legislative history].

## CONCLUSION

In light of the foregoing analysis, plaintiff's first three causes of action, based on §§ 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Bankruptcy Code, must be dismissed for failure to establish a *prima facie* case. The debtor's debt to the plaintiff, in the amount of $8,614 is hereby deemed nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

SETTLE JUDGMENT.