**In re Guiseppe Antonio CRETA, Debtor.**

**Gem Ravioli, Inc., Appellant,**

**v.**

**Guiseppe Antonio Creta, Appellee.**

**BAP No. RI 01–032.**

United States Bankruptcy Appellate Panel of the First Circuit.

Jan. 7, 2002.

Michael J. Kiselica, Kiselica Law Firm, Warwick, RI, for Plaintiff–Appellant.

Peter G. Berman, Raskin & Berman, Providence, RI, for Defendant–Appellee.

Before HAINES, DEASY, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

Gem Ravioli, Inc. ("Gem Ravioli") appeals the bankruptcy court's order finding the Debtor's obligation to Gem Ravioli dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). For the reasons outlined below, we vacate the order and remand the case to the bankruptcy court so that it may take action consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

On May 30, 1997, James Maddalena, the owner of Gem Ravioli, met with the Debtor to discuss the Debtor's installation of two air conditioning units at Gem Ravioli's property. At that meeting, the Debtor allegedly misrepresented that he held a license issued by the Rhode Island Department of Labor and Training permitting him to engage in the business of refrigeration and air conditioning. Gem Ravioli and the Debtor entered into a contract for the installation of the two units at Gem Ravioli. Maddalena apparently gave the Debtor a deposit of $800.00 immediately upon signing the contract. The contract provided that another $3,200.00 would be due upon completion of the job.

The Debtor installed the units and Gem Ravioli paid the remainder of the contract price. The air conditioning units worked for a short period and then ceased functioning. Gem Ravioli instituted suit against the Debtor in state court in Rhode Island. The Debtor defaulted. The state court held a contested hearing on damages and, on April 13, 1999, entered judgment in the amount of $7,053.78 in favor of Gem Ravioli. The judgment consisted of the contract price plus repair costs.

On December 22, 1999, the Debtor filed a Chapter 7 bankruptcy petition. Gem Ravioli filed a complaint objecting to dischargeability under section 523(a)(2)(A). A trial of the matter was held on April 17 and 19, 2001, and, at the conclusion of the parties' evidence, the attorneys presented argument. After engaging counsel for Gem Ravioli in a dialogue regarding the requirements of section 523(a)(2)(A), the bankruptcy judge ruled that he was unable to conclude that the Debtor's alleged fraudulent representations caused the damages suffered by Gem Ravioli. Accordingly, the bankruptcy court entered judgment in favor of the Debtor and the debt to Gem Ravioli was declared dischargeable. On April 27, 2001, Gem Ravioli filed this appeal.

## II. JURISDICTION

The Bankruptcy Appellate Panel has jurisdiction over this appeal of the bankruptcy court's final order denying Gem Ravioli's complaint and discharging the Debtor's obligation to Gem Ravioli. *See* 28 U.S.C. § 158(a)(1) and (b).

## III. STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard while its conclusions of law are reviewed *de novo*. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–08 (1st Cir.1997); *Grella v. Salem Five Cent*

*Sav. Bank,* 42 F.3d 26, 30 (1st Cir.1994); *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1310–11 (1st Cir.1993). *See also* Fed. R. Bankr.P. 8013.

## IV. DISCUSSION

■ Section 523(a)(2)(A) excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In order to have the debt to it declared nondischargeable under section 523(a)(2)(A), a creditor must establish the following:

1. The debtor made a knowingly false representation or one made in reckless disregard of the truth;

2. The debtor intended to deceive;

3. The debtor intended to induce the creditor to rely upon the false statement;

4. The creditor actually relied upon the misrepresentation;

5. The creditor's reliance was justifiable; and

6. The reliance upon the false statement caused damage.

*McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 32 (1st Cir.2001) (citing *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997)). In *Spigel* the First Circuit further explained that "[t]hough the first two elements of the *Palmacci* test show fraudulent conduct generally, the last four embody the requirement that the claim of the creditor arguing nondischargeability in an adversary proceeding must *arise as a direct result of the debtor's fraud." Id.* (emphasis added).

On appeal, Gem Ravioli argues that the bankruptcy court erred in determining that the Debtor was entitled to discharge its debt because Gem Ravioli had not established a causal connection between the fraudulent representations and the damages suffered. Upon review of the evidence, the bankruptcy court was unable to find that Gem Ravioli incurred damages as a result of the Debtor's alleged false statements. In the court's view, it could not find in favor of Gem Ravioli on what the court called "the causation issue." Trial Transcript at 28 ("[B]ut on the—what I guess I keep referring to as the causation issue, I can't see how that could possibly result in a plaintiff's decision here."). In making its determination the bankruptcy court struggled with the sixth element of the *Palmacci* test, i.e., whether Gem Ravioli's reliance upon the Debtor's alleged false statement—that he possessed a state license to perform air conditioning work— caused Gem Ravioli damage. *See, e.g., id.* at 15, 22, 25 ("[D]on't you still need some causation here about whether the fraud, the alleged fraud was the proximate cause? I mean, this is not a negligence case, but you still have to show some causation that the fraud is what caused the damage.... I still don't see how the fraud that you're alleging and that you probably have proved resulted in the damage that you suffered.... The fraud you've alleged is that he didn't have a license, to me that's a condition, that's not a cause of what happened.").

■ In effect, the bankruptcy court held that Gem Ravioli was required to prove not only that it entered into the contract with the Debtor based upon a fraudulent misrepresentation, but also that the Debtor knew that his performance of the contract would actually be defective. In our view, this is where the bankruptcy court erred. In *Field v. Mans,* the debtor argued that notwithstanding his fraudulent misrepresentation, the creditors were re-

quired to prove that they would actually have accelerated the debt if they had been aware of the misrepresentation. *Field v. Mans*, 157 F.3d 35, 45 (1st Cir.1998). The debtor's contention was that regardless of the fraud no actual "extension of credit" could have occurred unless the creditor would have accelerated the debt. *Id.* The First Circuit rejected this argument and stated:

> It does not lie in [the debtor's] mouth, having cheated the [creditors] of their opportunity to have decided ... whether or not to exercise their acceleration right, to argue that they must now bear the difficult burden of demonstrating beyond question that they would, in fact, have accelerated the loan. We think it enough that the bankruptcy court found that, when the fraud occurred, the economic circumstances would have allowed the [creditors] to have successfully recovered their loan had they wished to do so.

> To force them to prove not only that they might realistically have exercised their acceleration remedy at the time, but that they necessarily would have done so, would place the shoe on the wrong foot, allowing a defrauder to escape the consequences of his fraud in all but the most unusual and clear-cut circumstances. [The debtor's] misstatements are the reason why the [creditors'] course of action must always, in some sense, remain speculative; it is fair that the weight of uncertainty should fall on [the debtor].

*Id.* In this case, the Debtor's fraudulent misrepresentation deprived Gem Ravioli of the opportunity to contract with a qualified refrigeration technician.[1] As discussed below, we believe that the bankruptcy court's ruling on the proximate cause requirement amounted to "placing the shoe on the wrong foot" in this case.

## A. Proximate Cause

■ The First Circuit Court of Appeals has explained that section 523(a)(2)(A) requires a "direct link" between the alleged fraud and the creation of the debt to be excepted from discharge. *Spigel*, 260 F.3d at 32 n. 7, 35. *See also Palmacci*, 121 F.3d at 787 (stating that the creditor must show that the debt "arose as a result" of the debtor's fraud). In *Spigel*, the First Circuit cited its earlier decision in *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 10 (1st Cir.1994), where it stated that the creditor must show that the debt owed to it "arises as a direct result of the debtor's misrepresentation or malice." *Spigel*, 260 F.3d at 32. The United States Supreme Court has indicated that the term "debt for" in section 523(a)(2)(A) means "debt arising from" or "debt on account of." *Cohen v. de la Cruz*, 523 U.S. 213, 220, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The Supreme Court has also used phrases such as "debts resulting from 'false pretenses, a false representation, or actual fraud'" and "debts traceable to falsity or fraud or to a material false financial statement" in discussing the requirement. *Field v. Mans*, 516 U.S. 59, 61, 64, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). But what do these terms really mean?

■ In analyzing the requirements of section 523(a)(2)(A), this Panel may look to the *Restatement (Second) of Torts* (1976),

---

**1.** We will assume for purposes of this discussion that the bankruptcy court had found that Gem Ravioli satisfied the first five requirements of section 523(a)(2)(A), namely that (1) the Debtor made a false statement regarding whether he had a proper license; (2) the Debtor intended to deceive Gem Ravioli; (3) the Debtor intended to induce Gem Ravioli to rely upon the false statement regarding his having a license; (4) Gem Ravioli actually relied upon the misrepresentation; and (5) Gem Ravioli's reliance was justifiable.

"the most widely accepted distillation of the common law of torts," for guidance. *Beneficial California, Inc. v. Brown (In re Brown)*, 217 B.R. 857, 862 (Bankr.S.D.Cal. 1998) (quoting *Field*, 516 U.S. at 68–70, 116 S.Ct. 437). *See also Veilleux v. Nat'l Broadcasting Co.*, 206 F.3d 92, 124 n. 21 (1st Cir.2000) ("In the absence of case law explicitly addressing causation requirements in the context of misrepresentation, we apply general tort principles consistent with the *Restatement (Second) of Torts* §§ 525–549 (1977)."). The *Restatement* explains that proximate causation encompasses two elements, "causation in fact" and "legal causation." *Restatement* §§ 546, 548A. *See also Brown*, 217 B.R. at 862. "Causation in fact" requires that a debtor's misrepresentations be a "substantial factor in determining the course of conduct that results in [the] loss." *Restatement* § 546.

> [Causation in fact] is concerned with the question of whether the misrepresentation by the defendant has caused the plaintiff's loss at all.

> If the misrepresentation has in fact induced the recipient to enter into the transaction, there is causation in fact of the loss suffered in the transaction . . . .

> For a misrepresentation to be a cause in fact of the pecuniary loss that results from the plaintiff's action or inaction, the plaintiff must have relied upon the misrepresentation in incurring the loss. It is not, however, necessary that his reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.

*Id.* § 546 comments a and b. "Legal causation" requires that a creditor's loss "rea-sonably be expected to result from the reliance." *Id.* § 548A.

> In general, the misrepresentation is a legal cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates . . . .

> Pecuniary losses that could not reasonably be expected to result from the misrepresentation are, in general, not legally caused by it and are beyond the scope of the maker's liability. This means that the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow . . . .

> In determining what is foreseeable as a result of the misrepresentation, the possibility of intervening events is not to be excluded altogether.

*Id.* § 548A comments a and b.

The bankruptcy court failed to apply the framework set forth in the *Restatement* in making its findings on proximate cause. The bankruptcy court should have considered whether Gem Ravioli had established each of the two elements of proximate cause, causation in fact and then legal causation.

### B. Causation In Fact

Gem Ravioli could establish causation in fact through evidence demonstrating that the Debtor's false statement regarding the license in fact induced Gem Ravioli to enter into the contract and that the misrepresentation was a substantial factor in influencing Gem Ravioli's decision to hire the Debtor to perform the work. Gem Ravioli contends that, in response to its direct question to the Debtor, the Debtor represented that he was a licensed refrigeration technician and even pointed to a license attached to the window of the van he was driving to support his representation. In fact, the Debtor was not licensed and the

license attached to the van window was a license for another person.

The State of Rhode Island has enacted a statutory scheme that requires pipefitters, refrigeration technicians, sheet metal workers, and others to be licensed before performing such work. R.I. Gen. Laws §§ 28–27–1 to 28–17–34. Under the Rhode Island scheme, there are three types of individuals who can perform refrigeration services: refrigeration apprentices, journeyperson refrigeration technicians, and master refrigeration contractors. *Id.* §§ 28–27–4(b), 28–27–4.1, 28–27–4.3(b). Each needs to possess a valid license issued by the Rhode Island Department of Labor and Training to perform work. *Id.* §§ 28–27–5, 28–27–5.1. An individual can be licensed as a refrigeration apprentice if he is at least eighteen years of age and is learning and working at the business of refrigeration under the direct supervision of a refrigeration master or journeyperson. *Id.* §§ 28–27–4.3(b), 28–27–5.1. A journeyperson refrigeration technician can obtain a license if he has completed a five year apprentice program (or two years of schooling and a three year apprentice program) and has passed the journeyperson refrigeration technician examination. *Id.* §§ 28–27–4.1, 28–27–5.1, 28–27–11. An individual can be licensed as a master refrigeration contractor only if the individual has held a journeyperson's license for a minimum of a year and has passed the master test. *Id.* §§ 28–27–5, 28–27–10(a). It is clear that the Rhode Island licensing requirements for licensing refrigeration technicians is not simply a registration or revenue raising scheme, but rather the statute was enacted to ensure a certain level of competency by refrigeration technicians.

Thus, when an individual asserts that he possesses a refrigeration license, whether it be an apprentice's license, a journeyperson's license, or a master's license, he is making a representation that he possesses the necessary level of skill and knowledge to perform refrigeration and air conditioning work. A misrepresentation as to whether a debtor has such a license goes to the very essence of the agreement, i.e., the reliance by the contracting party that the debtor has the requisite knowledge, experience, and training to properly complete the work. *Parker v. Grant (In re Grant),* 237 B.R. 97, 119 (Bankr.E.D.Va. 1999). *See also Kendrick v. Pleasants (In re Pleasants),* 231 B.R. 893, 898 (Bankr. E.D.Va.1999) ("Professional licenses carry with them a degree of presumed competence ..."); *Bottari v. Baiata (In re Baiata),* 12 B.R. 813, 820 (Bankr.E.D.N.Y.1981) ("The incidence of license conveys to lay persons a concept of authority and standards of workmanship impacting on reliance.").

■ When a creditor establishes that a debtor fraudulently induced the creditor to enter into a transaction by a misrepresentation that goes to the essence of the transaction, i.e., a debtor's training, competency or experience to complete the work contemplated by the transaction, the misrepresentation was a substantial factor in entering into the transaction, the debtor's work later appears defective, and the creditor suffers a loss, the creditor has established a *prima facie* case that the defects derive directly from the lack of professional qualifications of the debtor. *Grant,* 237 B.R. at 119. *See also Pleasants,* 231 B.R. 893 (finding a debt nondischargeable where the debtor knowingly misrepresented himself as an architect with the intent for the creditors to rely on his representations and the creditors relied on his representations to their detriment); *McCain v. Fuselier (In re Fuselier),* 211 B.R. 540 (Bankr.W.D.La.1997)

(finding the homeowner's judgment against the debtor non-dischargeable where the debtor misrepresented that he held a contractor's license and without authority placed a different contractor's license number on the proposed construction contract); *McDaniel v. Border (In re McDaniel)*, 181 B.R. 883 (Bankr.S.D.Tex. 1994) (finding the debtor's obligation to a homeowner nondischargeable where the homeowner established that the debtor made a false representation that he was an architect, with the intent of deceiving her, she relied to her detriment on those representations and suffered injury as a result); *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990 (Bankr.M.D.N.C.1994) (holding that the debtor's obligation to home purchasers for repair of construction defects would be excepted from discharge on the grounds that the purchase was induced by the builder's false pretenses, the builder intentionally misled the purchasers into believing he was a qualified general contractor building a quality home when in fact he was an unlicensed, unqualified builder who had recently failed the general contractors licensing exam, and the purchasers detrimentally relied on the misrepresentations), *abrogated on other grounds*, *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *Baiata*, 12 B.R. 813 (finding a debt non-dischargeable where the plaintiff would not have hired the debtor to perform contracting and construction work had the debtor not falsely represented that he was licensed by the county to perform such work).

■ However, not every claim for loss or damage, arising from a contract that was entered into based on a debtor's fraudulent misrepresentation, will be excepted from discharge. A misrepresentation which is of little or no importance to a creditor's decision to enter into the contract with the debtor is not material and does not go to the essence of the contractual agreement. *See Grant*, 237 B.R. at 119 (holding that the reliance placed upon a misrepresentation of marital status in entering into a condominium lease was so negligible the plaintiffs failed to prove that their damages under the lease for unpaid rent were proximately caused by the misrepresentation). Where a misrepresentation does not go to the essence of the contract, the creditor will need additional evidence to establish that the misrepresentation was a substantial factor in determining the course of conduct that results in the loss. However, where the misrepresentation goes to the essence of the contract, the bankruptcy court should not permit a debtor to benefit from the uncertainty that may arise in the very circumstances which the fraudulent misrepresentation created. *See Field v. Mans*, 157 F.3d at 45. In this case, if Gem Ravioli presented sufficient evidence to establish that the Debtor's misrepresentation concerning his licensing status was a substantial factor in entering into the contract with the Debtor, the misrepresentation went to the essence of the contract, and the work performed by the Debtor was defective, Gem Ravioli would have established a *prima facie* case on the first element of proximate causation, causation in fact.

## C. Legal Causation

■ The second element of proximate cause under the *Restatement* requires Gem Ravioli to establish that its loss could reasonably have been expected to result from its reliance on the Debtor's misrepresentation. *See Restatement* § 548A comments a and b. In other words, was Gem Ravioli's loss foreseeable? Did the Debtor's misrepresentation tend to cause the losses or the likelihood that they would follow? Losses that could not be reasonably expected to result from the misrepre-

sentation are not legally caused by it. *Id.; Grant,* 237 B.R. at 118–19 (finding no legal causation because unlike professional licensing cases, where evidence of defective work may be anticipated to result from the lack of professional qualifications, a misrepresentation as to marital status does not suggest that damages for unpaid rent may be anticipated). In this case there can be little question that defective work is foreseeable if the Debtor does not have the qualifications that would be required of a licensed refrigeration technician in the State of Rhode Island.

### D. Burden of Proof and Burden of Production

In its colloquy with Gem Ravioli's counsel, the bankruptcy court correctly stated that this case was "not a *res ipsa loquitur* case." Trial Transcript at 24. Even if Gem Ravioli presented sufficient evidence to establish a *prima facie* case on the necessary elements of proximate causation, it only would have satisfied its initial burden of production with respect to establishing a causal link between the Debtor's false statement and the harm that it suffered in paying for the Debtor's services and for subsequent repairs. *See Garrity v. Hadley (In re Hadley),* 239 B.R. 433, 437 (Bankr.D.N.H.1999) ("The burden of production is met when a party presents enough evidence to make out a *prima facie* case. In other words, the burden is satisfied when enough evidence is presented so that a reasonable person *could* infer the existence of the fact to be proven. If the burden is not met, the party bearing it will suffer an adverse ruling on the relevant issue.") (citations omitted). Under the *Restatement,* Gem Ravioli would have met its initial burden to set forth a *prima facie* case on the elements of proximate cause if it established that (1) the Debtor made a fraudulent misrepresentation that went to the essence of the contract; (2) Gem Ravioli's reliance upon the Debtor's false statement was a substantial factor in determining the course of conduct (i.e., the retention of an unlicensed person to do the air conditioning work); and (3) Gem Ravioli's contractual loss could reasonably be expected to result from reliance on the misrepresentation (i.e., the equipment installed by an unlicensed person did not operate for more than a minimal period of time). The *Restatement* explains, however, that in determining what is foreseeable as a result of a misrepresentation, the possibility of intervening events is not to be excluded altogether. *Restatement* § 548A comment b.

 Therefore, once a creditor has met its initial burden of production regarding the two elements of proximate cause, the burden of production then shifts to the debtor to establish that intervening events, not the debtor's misrepresentation, are the factual or legal cause of the creditor's loss. In this case, the Debtor might have presented evidence that his failure to be licensed was not due to the lack of knowledge or experience necessary to be licensed (e.g., failure to timely pay a required fee) or that some other intervening event (e.g., improperly manufactured equipment, mishandling of the equipment by a third party or improper use by Gem Ravioli) caused damage and loss. Alternatively, the Debtor could have introduced evidence showing that, despite his failing to have a license, he had over thirty years experience as a refrigeration installer and repairman and, that something other than his lack of qualifications caused the harm. If the Debtor made such a showing, the burden of production would then shift back to Gem Ravioli to rebut the Debtor's evidence. At all times, however, the ultimate burden of persuasion would remain with Gem Ravioli as the party seeking to except the debt from discharge. *See Gro-*

*gan v. Garner,* 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (explaining that the party contesting dischargeability has the burden of proving each element by a preponderance of the evidence); *Hadley,* 239 B.R. at 437 ("The burden of persuasion, on the other hand, is a higher one and requires enough evidence to persuade the trier of fact that the alleged fact is true by the relevant evidentiary margin.").

## V. CONCLUSION

The Panel is satisfied that the bankruptcy court did not apply the correct legal standard and, therefore, erroneously concluded that Gem Ravioli had not established factual and legal causation. As a consequence, the court did not make findings on the other five elements of Gem Ravioli's section 523(a)(2)(A) claim.[2] Accordingly, we reverse the bankruptcy court's determination that Gem Ravioli had not established causation, vacate its judgment for the Debtor, remand the matter for findings on causation consistent with this opinion as well as the other elements of the section 523(a)(2)(A) non-dischargeability claim, and for entry of a judgment consistent with those findings.

---

**2.** While the bankruptcy court's decision contains various statements regarding the state of the evidence and what appear to be hypothetical findings based on the court's original find-ing on causation, the record does not contain specific factual findings or legal conclusions with respect to the other elements of Gem Ravioli's section 523(a)(2)(A) claim.