**In re Donald HANFT, M.D., P.A., Debtor.**

**Suzanne Church, Plaintiff,**

**v.**

**Donald Hanft, M.D., P.A., and Donald Hanft, M.D., jointly and individually, Defendants.**

**Bankruptcy Nos. 99–14729–BKC–RAM, 99–14731–BKC–RAM.**
**Adversary No. 99–1330–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

March 20, 2002.

Kathe Kozlowski, Boynton Beach, FL, for defendants.

Craig Z. Sherar, Coconut Grove, FL, for plaintiff.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether a debt based on a medical malpractice judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).

On December 31, 1970, Donald Hanft was licensed to practice medicine in the State of Florida. Dr. Hanft renewed his license in 1973, 1975, and 1977. Due to his failure to renew his license in December, 1979, Dr. Hanft's medical license expired and became inactive pursuant to F.S. § 458.321. For the following ten years, Dr. Hanft practiced medicine with an inactive license. During the inactive period, Dr. Hanft's wife, who is also a physician, renewed her medical license within the required time frames. Her license remained active. At some time during that ten-year period, Dr. Hanft's license terminated by operation of law. During the inactive period, F.S. § 458.321 changed the time period for an inactive license to automatically terminate. However, laws of Florida chapter 83–329 § 96 clearly provided that any li-

cense inactive on October, 1983, would automatically expire after the next biennial renewal. For Dr. Hanft, this would have been December 31, 1987. In any case, Dr. Hanft certainly knew of his inactive status no later than February, 1989, when he corresponded with the Board of Medicine about reactivating his license.

On February 23, 1990, Dr. Hanft's license was reactivated after he paid a renewal fee and completed 203 hours of continuing medical education requirements.

On October 14, 1991, the Department of Professional Regulation filed an administrative complaint regarding Dr. Hanft's practice of medicine with an inactive license. The administrative complaint charged Dr. Hanft with practicing without an active license in violation of F.S. § 458.327(1)(a). Violations of that statute constitute third degree felonies. The administrative complaint sought relief imposing one or more of the following remedies: revocation or suspension of license, restriction of Dr. Hanft's practice, imposition of a fine, issuance of a reprimand, or placing Dr. Hanft on probation.

The administrative complaint was resolved by a consent agreement which, among other things, formally reprimanded Dr. Hanft and imposed a fine of $5,000.

The Plaintiff, Suzanne Church, first became a patient of Dr. Hanft in March, 1980. The first event relevant to the malpractice claim occurred in July, 1988, when Dr. Hanft diagnosed the cause of Ms. Church's failure to menstruate after discontinuing birth control pills as post-pill amenorrhea. During an office visit with Ms. Church on March 14, 1989, Dr. Hanft once again diagnosed Ms. Church with post-pill amenorrhea. At this point, Ms. Church had not had a menstruation cycle for over a year. This visit in March, 1989, was after the point in time at which the record supports Ms. Church's allegation that Dr. Hanft was aware that his license was inactive.

Ms. Church had her last visit with Dr. Hanft on January 7, 1991. He once again diagnosed her with post-pill amenorrhea since her menstruation cycle had not resumed for more than two years. Dr. Hanft told her not to worry, that it was not a big deal that her menstruation had not resumed. Dr. Hanft assured Ms. Church that there was no problem in getting pregnant even though she was not menstruating. Dr. Hanft was not concerned with the lack of menstruation, nor did he want to treat it.

In 1993, after treatment by an ophthalmologist, Ms. Church had an MRI test which revealed a tumor that was affecting her vision.

On March 24, 1995, Ms. Church served Dr. Hanft with a Notice of Intent to Initiate Litigation for Medical Malpractice. The malpractice lawsuit was filed on July 13, 1995. At trial, Ms. Church's expert, Dr. Comargo, testified that Dr. Hanft was negligent because he failed to perform certain customary tests during Ms. Church's visits in 1988 and 1989 which would have revealed the tumor which, at that state and at that time, could have been treated. Instead, by the time the tumor was discovered, it had to be surgically removed, permanently affecting Ms. Church's vision and leaving her unable to bear children.

The malpractice case went to a jury on the issue of damages and the jury returned a verdict in favor of Ms. Church in December, 1998, for $250,000.

Since 1987, the State of Florida has had a financial responsibility statute in effect to help ensure that doctors can satisfy malpractice claims. Under F.S. § 458.320(2), as a condition of licensing, a doctor with hospital privileges must comply with one of the following three meth-

ods of demonstrating the financial capacity to pay claims and costs of a possible medical malpractice action: (1) maintain an escrow account aggregating at least $750,000; (2) carry medical malpractice insurance of not less than $250,000 per claim with an aggregate of at least $750,000; or (3) obtain and maintain an unexpired, irrevocable letter of credit of not less than $250,000 per claim with a minimum aggregate availability of at least $750,000. Dr. Hanft needed to comply with F.S. § 458.320(2) because he had hospital privileges.

■ In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), a plaintiff must show that (1) the debtor made a false representation with an intent to deceive the creditor; (2) the creditor relied on the representation; (3) the reliance was reasonably founded; and (4) the creditor sustained a loss as a result of the representation. *In re Berman*, 154 B.R. 991 (Bankr.S.D.Fla.1993).

■ The court must first determine whether a malpractice judgment is a "debt" which can be excepted under 11 U.S.C. § 523(a)(2). The United States Supreme Court has interpreted the term "debt" broadly for dischargeability purposes. *See Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In that case, the Supreme Court held that "523(a)(2)(A) prevents discharge from all liability arising from fraud." The Court also held that the term "debt" is expansive in scope and, therefore, allowed an award of treble damages to fall within the parameters of § 523(a)(2)(A). This is analogous to the instant case, as the Plaintiff here claims that the malpractice damage award represents a debt for money, property, services or credit to the extent obtained by actual fraud, thereby also falling within the provision's broad scope.

■ The Plaintiff alleges two misrepresentations by Dr. Hanft: (1) that Dr. Hanft continuously represented himself or held himself out to be a medical doctor with an active license when, in fact, his license was inactive, and (2) Dr. Hanft willfully failed to inform the Plaintiff that he did not carry medical malpractice insurance or otherwise comply with the financial responsibility requirements of F.S. § 458.320.

Bankruptcy courts in the Southern District of Florida have held that "the willful misrepresentation of medical experience and expertise has been found to give rise to a nondischargeable debt." *See In re Doyan*, 204 B.R. 250 (Bankr.S.D.Fla.1996), citing *Berman, supra*, 154 B.R. at 1002. In *Berman*, the court held that where medical credentials were significantly overstated by the debtor in order to induce the patient to undertake certain medical procedures, the debt incurred by a medical malpractice judgment was nondischargeable. 154 B.R. at 1001. The court found that the debtor's "deceptive" marketing techniques resulted in reasonably founded reliance by the plaintiff on these misrepresentations and loss sustained as a result. In reaching its conclusion, the court noted that the debtor "held no malpractice insurance and had no other means of paying malpractice judgments against him." 154 B.R. at 1002.

The facts of this case fit within the same principles supporting the nondischargeability judgment in *Berman*. The debtor's failure to disclose that he was practicing with an inactive and terminated license, coupled with his failure to disclose that he neither had insurance nor assets set aside in an escrow account to satisfy a malpractice judgment, satisfy the elements of § 523(a)(2)(A).

■ The element of *scienter*, the willful or knowing element of fraud, can be established in three ways:

(1) that the representation was made with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity. Under the first phase, the proof must show actual knowledge of the falsity of the representation. Under the second phase, it should show that the representation was made in such absolute, unqualified, and positive terms as to imply that the party making it had knowledge of its truth, and that he made such absolute, unqualified, and positive assertion on a subject of which he was ignorant, and that he had no knowledge whether his assertion in reference thereto was true or false. Under the third phase, the proof should show that the party occupied such a special situation or possessed such means of knowledge as made it his duty to know as to the truth or falsity of the representation made. If the proof establishes either one of these three phases, the *scienter* is sufficiently made out.

*Parker v. State of Florida Board of Regents,* 724 So.2d 163, 168 (Fla. 1st DCA 1998).

■ The law does not allow one who holds himself out as a doctor to claim that he did not commit fraud because he did not know his license was inactive or terminated. Rather, F.S. § 458.301 and § 458 .327(1)(a) impose upon a doctor the duty to know the status of his license. One whose profession requires him to continually make a representation as to a material fact has a duty to ensure the truthfulness of that fact. Florida Statute § 458.231(1)(a) is a *malum prohibitum* crime. *Malum prohibitum* crimes impose on the violator the duty to conduct himself in a manner that conforms with the law. Thus, Dr. Hanft has a duty to know the status of his license to ensure that he is not violating the law. Accordingly, Dr. Hanft's admitted failure to know the status of his medical license constitutes the intent necessary to sustain an action under § 523(a)(2)(A).

In any event, the Court finds that Dr. Hanft knew that his license was inactive when he treated Ms. Church in 1988 and 1989. Dr. Hanft's testimony to the contrary was not credible. Dr. Hanft's lack of credibility was established by his demeanor, what he said, how he said it, and how his testimony related to the other evidence. Dr. Hanft's position would be more tenable if he failed to pay his medical license renewal fee just once, but in this case, he failed to pay for ten years. Meanwhile, Dr. Hanft's wife, who is also a doctor, was regularly paying her renewal fees. Moreover, Dr. Hanft failed to complete over 200 hours of continuing medical education requirements during the inactive period. While a doctor might rely on office staff to pay certain bills such as a license renewal fee, continuing medical education requirements must be completed by the doctor personally. Dr. Hanft deliberately ignored those requirements just like he ignored the requirement that he pay his license renewal fees. The Court believes that Dr. Hanft made a conscious and deliberate decision to stop paying his medical license renewal fees.

Ms. Church testified that she relied on Dr. Hanft's representation that he was a licensed doctor. She stated that she observed numerous certificates, diplomas, and other documents on the walls of Dr. Hanft's office that represented to her that he was licensed to practice medicine. She stated that she would not have consented to Dr. Hanft treating her if she had known that Dr. Hanft's license was inactive. Un-

der these circumstances, Ms. Church's reliance was justifiable.

A professional license carries with it a degree of presumed competence. *In re Pleasants,* 231 B.R. 893, 898 (Bankr. E.D.Va.1999); *In re Baiata,* 12 B.R. 813, 820 (Bankr.E.D.N.Y.1981) ("The incidence of license conveys to lay persons a concept of authority and standards of workmanship impacting on reliance.") Dr. Hanft's misrepresentation that he was a licensed doctor was material because it went to the very essence of Ms. Church's decision to seek treatment from Dr. Hanft, i.e. the reliance by Ms. Church that Dr. Hanft had the requisite knowledge, experience, and training to properly treat her for her medical condition.

■ The law does not require that a defendant who commits fraud intend to cause the specific harm suffered by a plaintiff. Like any other tortfeasor, a defendant is responsible for all of the natural and probable consequences of his fraudulent act. *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc.,* 899 F.2d 1045, 1069 (11th Cir.1990).

> Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his injuries are thereafter aggravated or increased by the negligence, mistake or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor. *Texas & Pacific Ry. Co. v. Hill,* 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918 (1915).

*J. Ray Arnold Lumber Corporation of Olustee v. Richardson,* 105 Fla. 204, 141 So. 133 at 135 (1932).

■ Because the original fraudulent act of Dr. Hanft—his false representation of the status of his license—caused Ms. Church to receive medical treatment from him and, as a result of the negligent treatment Ms. Church was injured, the malpractice injury (judgment) is a natural and proximate result of the fraudulent act. Put another way, were it not for Dr. Hanft's fraudulent representation that he was a doctor, Ms. Church would never have put herself in the situation where Dr. Hanft could have committed malpractice on her. *See In re Creta,* 271 B.R. 214, 220 (1st Cir. BAP 2002):

> When a creditor establishes that a debtor fraudulently induced the creditor to enter into a transaction by misrepresentation that goes to the essence of the transaction, i.e. a debtor's training, competency or experience to complete the work contemplated by the transaction, the misrepresentation was a substantial factor in entering into the transaction, the debtor's work later appears defective, and the creditor suffers a loss, the creditor has established a *prima facie* case that the defects derive from the lack of professional qualifications of the debtor.

In light of the fraud committed by Dr. Hanft in misrepresenting the status of his license, the malpractice judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

In order for a debt to be nondischargeable under 11 U.S.C. § 523(a)(4), it must have been the result of fraud or defalcation while the debtor was acting in a fiduciary capacity.

■ It is well-settled in this Circuit that the term "fiduciary capacity" is to be con-

strued narrowly and requires the existence of an actual or technical trust. It is not nearly as broad as the common law notion of fiduciary duty. *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993).

In order for a technical trust to exist, three elements must be satisfied: (1) a segregated trust *res,* (2) identifiable beneficiaries; and (3) affirmative trust duties established by contract or statute. *See In re Hutchinson,* 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). Florida Statutes § 458.320(2) meets all of these requirements. A segregated trust *res* is established by the statute requiring the doctor to obtain an insurance policy, an escrow account, or a line of credit. The identifiable beneficiaries are the doctors' patients whom they injure. The affirmative trust duties are created by the statute using the words, "as a condition of licensing", demonstrating "financial responsibility to pay claims", and "establishing and maintaining an escrow account".

*Quaif* does not require that there be an actual fund set up to establish the fiduciary capacity, to satisfy 11 U.S.C. § 523(a)(4), only that there is an obligation to set up the fund.

Dr. Hanft is not exempt from the fiduciary requirement of F.S. § 458.320(2) by meeting the posting requirements of F.S. § 458.320(5)(f)(7). That provision allows "any person holding an *active* license" (emphasis added) to be exempt from the fiduciary requirements by posting a sign, which Dr. Hanft did, and meeting certain other criteria, which Dr. Hanft did. Dr. Hanft, however, cannot exempt out because at the time he was treating Ms. Church he did not have an *active* license. Therefore, he had to meet the fiduciary requirements.

Additionally, F.S. § 458.320(6) permanently disqualifies any doctor from the exemption provisions if he commits deceptive, untrue, or fraudulent representations with regard to any provision of F.S. § 458.320. Dr. Hanft's posting of a sign and claiming to be a doctor while his license was inactive and terminated disqualifies him from the exemption provisions forever.

The § 523(a)(4) element of defalcation is satisfied. The case law is clear that defalcation is not a tough standard to meet; it does not require intentional misconduct. It refers to a failure to produce funds entrusted to a fiduciary. Defalcation, as used in § 523(a)(4), "does not have to rise to the level of fraud, embezzlement or even misappropriation." *Quaif, supra,* 4 F.3d at 955. Thus, Dr. Hanft's failure to fund the escrow account can satisfy the defalcation elements of the § 523(a)(4) claim.

The Court finds that there is a sufficient link between Ms. Church's claim and the failure to maintain the fund and the exception to discharge under § 523(a)(4). While certainly Ms. Church's physical injuries resulted directly from the medical malpractice, the concept of claim or debt has been broadly interpreted, as discussed in the § 523(a)(2) discussion and as discussed in the Supreme Court's decision in *Cohen v. de la Cruz, supra.* The Court is satisfied that Ms. Church's claim or debt, for dischargeability purposes, includes the financial protection she would have had to enforce her malpractice judgment if Dr. Hanft had fulfilled his statutory obligation to maintain an escrow account or post a letter of credit. Thus, the Court finds that Ms. Church's malpractice judgment is nondischargeable under § 523(a)(4).

For the reasons set forth above, the Court finds that the malpractice judgment

entered in favor of Suzanne Church against Donald Hanft is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(4).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

In accordance with Fed.R.Bankr.P. 9021, the Court is contemporaneously entering a separate judgment.