Peter J. GOGUEN, Debtor.

David M. Sharfarz, Plaintiff–Appellee,

v.

Peter J. Goguen, Defendant–Appellant.

BAP No. MW 10–074.
Bankruptcy No. 09–42550–MSH.
Adversary No. 09–04158–MSH.

United States Bankruptcy Appellate Panel
for the First Circuit.

July 21, 2011.

Paul R. Chomko, Esq., on brief, Watertown, MA, for Defendant–Appellant.

Stephen F. Gordon, Esq., Todd B. Gordon, Esq., and Ashley S. Whyman, Esq., on brief, Boston, MA, for Plaintiff–Appellee.

Before VOTOLATO, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Peter J. Goguen ("Goguen") appeals from a bankruptcy court determination excepting the claim of David M. Sharfarz ("Sharfarz") from discharge under § 523(a)(2)(A).[1] For the reasons discussed below, we **REVERSE** the order of the bankruptcy court.

## BACKGROUND

### A. Pre–Petition Events

In 2006, Sharfarz moved from Alaska to Acton, Massachusetts with his 14–year–old son, and he purchased a house which required extensive renovations. After meeting with several contractors, Sharfarz selected Goguen to do the work.

On September 15, 2006, Sharfarz and Goguen entered into a construction contract. Because Sharfarz was eager to provide a stable home for his son and to have the foundation poured before winter, they discussed the construction schedule exten-

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.,* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37.

sively. The contract required Goguen to secure the necessary permits and complete the renovation by March 15, 2007; it also required Sharfarz to make seven progress payments totaling $171,286.00.

Although Goguen attempted to obtain the building permit on September 25, 2006, the town building department rejected his application because of his failure to satisfy certain requirements. Instead of a building permit, Goguen received a list of unfulfilled prerequisites. Although he failed to procure the construction permit, or even to submit the application, on September 27, 2006, Goguen sent Sharfarz the following e-mail, which is at the heart of this controversy: "On the permit—application was filed and I'm in wait mode, I will check in this week on progress to make sure its [sic] moving along."

On October 12, 2006, Goguen made a second attempt to submit the permit application. Again, he was unsuccessful, this time due to his failure to secure prior approval of the electrical plans from the fire department. The process of obtaining fire department approval took several additional weeks, only adding to the delay. Because construction failed to progress on schedule, Sharfarz telephoned Goguen, who explained that "the town was dragging its feet" in issuing the permit. When Sharfarz proposed to call the town inspector to accelerate the approval process, Goguen discouraged him, warning that his intervention would make matters worse. As the construction stalled through October and November 2006, Goguen continued to blame the lack of progress on the town's delay in issuing the permit. Relying on Goguen's representations regarding the purported difficulties with the permit process, Sharfarz elected not to cancel the contract.

Goguen finally submitted the permit application on November 29, 2006, and received the permit on December 11, 2006. During the following year, construction plodded along until November 26, 2007 when Goguen finally informed Sharfarz that the project was underfunded and he had run out of money. By then, Sharfarz had already paid the entire contract price, although the house was far from complete. Goguen asked Sharfarz to fund the completion of the project and when Sharfarz refused, Goguen abandoned the job, as he had threatened. Sharfarz then met with the building inspector at the construction site in order to assess the status of the project. Not only did he find the home unwinterized and in disarray, but he also discovered that Goguen had lied about the timing of the building permit application a year earlier. In order to complete the project, Sharfarz hired new contractors, whom he paid over $100,000.00.

Sharfarz sued Goguen in state court and obtained a default against him for failure to appear. After a hearing on assessment of damages, the state court ruled that Goguen's conduct violated Mass. Gen. Laws ch. 93A and assessed the following damages: $88,000.00 (plus prejudgment interest) in single damages; $176,000.00 in punitive damages; and $8,745.50 in attorneys' fees.

## B. The Bankruptcy Proceedings

Thereafter, Goguen filed a chapter 7 petition, and Sharfarz commenced an adversary proceeding, seeking to have the entire state court judgment excepted from discharge pursuant to § 523(a)(2)(A) and (a)(6). At trial, Sharfarz testified that if he had known the truth about the permit application, he "would have stopped the project on a dime." The bankruptcy court ruled in Sharfarz's favor, concluding that:

> Had Mr. Goguen not lied to Mr. Sharfarz about the status of his building permit on September 27, 2006, Mr.

Sharfarz would have canceled the construction contract and received all or most of his initial payment. . . .

Mr. Sharfarz suffered $88,000 in actual damages as a result of Mr. Goguen's breach of the construction contract, damages which Mr. Sharfarz incurred because Mr. Goguen lied to him in September 2006 in order to avoid Mr. Sharfarz's cancelling the contract.[2]

Accordingly, the bankruptcy court ruled that "$88,000.00 of the amount owed by Goguen to Sharfarz [was] nondischargeable under . . . § 523(a)(2) as a debt based on false representations."[3]

On appeal, Goguen argues that he merely breached his contract due to a cash shortfall, and this breach, rather than the misrepresentation about the building permit, caused Sharfarz's injury.[4] Sharfarz counters that had he known the truth about the status of the construction permit, he would have terminated the construction contract before incurring damages.

**2.** This ruling is set forth in the bankruptcy court's "Findings of Facts and Conclusions of Law," in which the bankruptcy judge wrote: "Judgment shall enter for Mr. Sharfarz and against Mr. Goguen in the amount of $88,000 on count I of the complaint. Judgment shall enter for Mr. Goguen on count II of the complaint." The bankruptcy court, however, never entered the judgment.

**3.** The bankruptcy court concluded that Sharfarz failed to prove that Goguen intended to cause injury as required by § 523(a)(6). *See* 11 U.S.C. § 523(a)(6).

**4.** Goguen also moved for reconsideration of the bankruptcy court determination, which was denied. He did not appeal the denial of reconsideration.

**5.** Ordinarily, a separate written judgment is required in a dischargeability action as evidence of the final determination. *See* Fed. R.Civ.P. 58(a), Fed. R. Bankr.P. 7058 and 9021. The bankruptcy court did not enter a

## JURISDICTION

 Before addressing the merits of an appeal, we must determine whether we have jurisdiction, even if the litigants do not raise the issue. *Aja v. Emigrant Funding Corp. (In re Aja )*, 442 B.R. 857, 860 (1st Cir. BAP 2011) (citation omitted). We have jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) certain interlocutory orders, with leave from the court. *Id.* (citations omitted). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment, whereas an interlocutory order only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (internal citations and quotations omitted).[5] An order denying dischargeability is a final, reviewable order. *Cambio v. Mattera (In re Cambio)*, 353 B.R. 30, 31 n. 1 (1st Cir. BAP 2004). Accordingly, we have jurisdiction to hear this appeal.

separate judgment in this case. However, the order denying reconsideration evidences its intent not to address any further matters in the case. Moreover, Goguen has not raised the absence of a separate judgment. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357(1978) (holding that when the lower court has clearly evidenced its intent, and the opposing party has not objected to the absence of a separate judgment, the requirements of Rule 58 are waived); *de Jesus–Mangual v. Rodriguez*, 383 F.3d 1, 5 (1st Cir.2004) (stating that a decision may be final for purposes of appellate jurisdiction despite lack of a separate document under Rule 58); and *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 975 (1st Cir.1982) (explaining combined memorandum and order was essentially an opinion and a final disposition). The Panel is satisfied that the parties have waived the separate judgment requirement in this instance.

## STANDARD OF REVIEW

 "The Panel generally reviews findings of fact for clear error and conclusions of law *de novo.*" *Douglas v. Kosinski (In re Kosinski)*, 424 B.R. 599, 607 (1st Cir. BAP 2010) (citations omitted). "Determinations regarding elements of an action under § 523(a)(2) are findings of fact reviewed for clear error." *Id.* (citations omitted). "A finding is clearly erroneous when, although there is evidence to support it, the Panel is left with the definite impression that a mistake has been made." *Id.* (citations omitted).

## DISCUSSION

### I. Nondischargeability Under § 523(a)(2)(A)

Section 523(a) identifies nineteen statutory exceptions to discharge. *See* 11 U.S.C. § 523(a). Pursuant to § 523(a)(2), certain debts incurred as a result of the debtor's fraudulent actions or statements are excepted from discharge. *In re Kosinski*, 424 B.R. at 607 (citations omitted). Section 523(a)(2)(A) specifically excepts from discharge debts obtained by "false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

 Exceptions to discharge are narrowly construed in favor of the debtor in an effort to further the "fresh start" policy underlying the Bankruptcy Code. *In re Kosinski*, 424 B.R. at 607–608. The creditor asserting an exception to discharge must show that its claim comes squarely within an exception enumerated in § 523(a). *Id.* In order to establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor

intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage.

*Id.* at 615 (citing *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001); *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997)). If the creditor fails to establish any one of the six elements by a preponderance of the evidence, then the court must reject its claim. *Palmacci*, 121 F.3d at 787 (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

### II. Application of the Standard

#### A. The Causation Issue

The dispositive issue in this appeal is whether Goguen's misrepresentation about the status of the permit application caused Sharfarz's damages. The remaining elements cited in *Kosinski, supra,* are undisputed. Goguen argues that "there is absolutely no causal connection between the alleged damages and the alleged misrepresentation." He contends that Sharfarz's "damages were caused by [his] breach of contract and failure to complete the project," and even concedes that he was negligent in estimating the cost of the project and performing the work. Relying on *Veilleux v. National Broadcasting Co.*, 206 F.3d 92 (1st Cir.2000), Goguen further argues that the bankruptcy court erred in failing to apply causation principles derived from the Restatement (Second) of Torts.

 Section 523(a)(2)(A) "requires a 'direct link' between the alleged fraud and the creation of the debt to be excepted from discharge." *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 816 (1st Cir. BAP

2005) (citations omitted). In analyzing the causation requirements of § 523(a)(2)(A), "the Panel may look to the Restatement (Second) of Torts (1976) for guidance." *Id.* (citing *Gem Ravioli, Inc. v. Creta (In re Creta)*, 271 B.R. 214, 218–19 (1st Cir. BAP 2002)); *see also Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92.

■ "The Restatement explains that proximate causation encompasses two elements, 'causation in fact' and 'legal causation.'" *In re Creta*, 271 B.R. at 219 (citing *Restatement (Second) of Torts* §§ 525–549 (1977)). There is causation in fact "[w]hen a creditor establishes that a debtor fraudulently induced the creditor to enter into a transaction by a misrepresentation that goes to the *essence of the transaction.*" *Id.* at 220 (emphasis added). Courts typically find that a debtor's misrepresentation regarding his/her expertise to complete the work contemplated by the transaction satisfies this standard, "if the misrepresentation was a substantial factor in entering into the transaction, the debtor's work later proves to be defective, and the creditor suffers a loss." *Id.* Accordingly, in *In re Creta*, the Panel held that the record supported a finding of causation in fact under the Restatement standard where the debtor misrepresented that he was licensed to install refrigeration and air conditioning units, the parties then entered into a contractual relationship based on this representation, and the units subsequently failed after installation, thereby causing the creditor harm. *Id.* "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." *Restatement (Second) of Torts* at § 548A. Courts generally find legal causation, like causation in fact, in the context of an individual's misrepresentation regarding his/ her professional license, where it is foreseeable that defective work will result from lack of professional qualifications. *In re Creta*, 271 B.R. at 220.

In *In re Creta*, the Panel ruled that the bankruptcy court erred when it failed to consider whether the plaintiff had established each of the two elements of proximate cause. *See id.* at 220. Based on the bankruptcy court's failure to apply the correct legal standard, the Panel reversed its determination that the plaintiff had not established causation, vacated its judgment for the debtor, and remanded the matter for findings on causation and for entry of a judgment consistent with those findings. *Id.* As in *In re Creta*, the bankruptcy court here did not indicate whether Sharfarz had established each of the two elements of causation set out in the Restatement.

**B. Causation in Fact**

■ The Restatement definition of "causation in fact" required Sharfarz to demonstrate that Goguen's misrepresentation induced him to enter into the construction contract. There is nothing in the record to support a conclusion that Goguen's misrepresentation about the permit is either the "direct link" to Sharfarz's damages or "the essence of the agreement" between the parties. Goguen's misrepresentation regarding the permit application post-dated the signing of the construction contract, so it could not possibly have induced Sharfarz to enter into the contract in the first instance. Although the timing of completion of the renovation was critical to Sharfarz, the record does not suggest that Goguen misrepresented any timing-related issues prior to contracting with Sharfarz. While Goguen's lie might have prevented Sharfarz from canceling the contract once entered into, that alone does not satisfy the Restatement requirement that the misrep-

resentation go to the essence of the contract. Accordingly, causation in fact is absent.

## C. Legal Causation

 The second element of proximate cause, legal causation, required Sharfarz to establish that his damages could reasonably have been expected to result from his reliance on Goguen's misrepresentation. It is not reasonable to suggest that Goguen could have foreseen that Sharfarz would spend $88,000.00 beyond the contract price because he misrepresented the status of the permit application for a ten-week period after they signed the contract. In fact, at oral argument, Sharfarz's counsel conceded that Sharfarz would have spent the additional $88,000.00 to complete the renovation in any event. Alternatively, it was foreseeable that Goguen could have completed the renovation in a timely and workman-like manner, even after lying about the permit, thereby preventing Sharfarz's pecuniary harm. Thus, legal causation is also absent.

Goguen argues persuasively that his negligence in under-estimating the cost of the project and ensuing breach of contract caused Sharfarz's damages. While Goguen's breach of contract might have caused Sharfarz harm, breach of contract is not a ground for nondischargeability under § 523. *See* 11 U.S.C. § 523.

## *CONCLUSION*

We conclude that the bankruptcy court did not apply the standard of causation which we enunciated in *In re Creta* and, therefore, it erroneously found that Goguen's misrepresentation regarding the permit caused Sharfarz's pecuniary loss.

Accordingly, we **REVERSE** the bankruptcy court's determination that Sharfarz's claim is excepted from discharge under § 523(a)(2)(A).